REGINALD J. GODFREY *vs.* UNITED ELECTRIC RAILWAYS COMPANY.

ETHEL ANNIE GODFREY *vs.* SAME.

JUNE 30, 1944.

PRESENT: Flynn, C. J., Moss, Capotosto, Baker and Condon, JJ.

CONDON, J. These are actions of trespass on the case for negligence, which were tried together to a jury in the superior court and resulted in a verdict for each plaintiff. The trial justice denied defendant's motion in each case for a new trial. Defendant excepted to such denials and has brought the cases here by its bills of exceptions.

The plaintiffs are husband and wife. Their actions against the defendant arose out of a collision between its bus, in which the wife was a passenger, and a parked truck on South Main street in the city of Woonsocket. As a result of such collision, the wife was thrown from her seat in the bus and suffered serious personal injuries for which she claims damages. Alleging consequential damages as a result of such injuries, the husband also brought his action. Since it is dependent upon his wife's action, we shall hereinafter refer only to her action, at least until we come to the consideration of the damages in each case.

Defendant contends under its exceptions that the trial justice erred in denying its motions for new trials, because the great weight of the evidence was against the verdicts on the issue of liability and because the damages in each case were grossly excessive. We shall consider those grounds in that order.

It appears from the evidence that the operator of the bus, while turning out to pass the parked truck, became concerned about an automobile then about to overtake and pass the bus on his left, and that in order not to collide with it, he drove his bus to his right and collided with the truck. The operator testified that before he reached the place where the collision occurred he saw a woman standing on the sidewalk at a bus stop waiting, as he thought, for the bus; that as he slowed down the bus in order to pick her up, she indicated that she did not want the bus; that he was then traveling close to the curbing on his right; that he thereupon put the bus in second speed and started to "pull out" when he saw the truck without lights parked almost in the middle of the street; that he started to turn out to

his left to go around the truck and, as he did, he looked through his rear vision mirror and saw an automobile about to pass the bus on its left; and that to avoid colliding with the automobile he "straightened out" and collided with the tailboard of the truck.

On that testimony the operator was guilty of negligence, unless it could be said that he was confronted with a sudden emergency, which he neither caused nor contributed to by his own conduct. The jury, on all the evidence, were warranted in finding that there was no emergency or that, if there was, the operator of the bus contributed to it by not keeping a vigilant lookout for other vehicles parked or moving on the street and by not having more effective control of his bus at the time he turned out to avoid the truck. Whether or not the truck was parked without lights, as testified to by the operator and denied by the plaintiff, would not make any difference in the circumstances, because the collision was clearly not the result of the operator's failure to see the truck. On the contrary, according to his own testimony, he deliberately "straightened out" and turned toward it to avoid colliding with the automobile on his left. We are, therefore, of the opinion that the trial justice did not err in approving the jury's verdict on the issue of liability.

On the question of damages our way is beset with more difficulty. The jury awarded the wife $9000 and the husband $1500. Those amounts are not only generous but we think that, on the evidence here, they are also grossly excessive. It appears from the trial justice's decision that he did not analyze the evidence, but contented himself with saying that, substantially, the wife "has got a broken leg and she has got this permanent disfigurement and in my opinion she is entitled to something for pain and suffering." In so far as this constitutes an approval of the specific damages awarded to the wife, it is, in our opinion, much too general and superficial and does not indicate that the trial justice has exercised his independent judgment in

the consideration of the damages. The same may be said of his approval of the husband's verdict, since he does not even mention the damages in that case. On the whole, his consideration of the damages in both cases is in striking contrast to his emphatic and explicit discussion of the issue of liability, wherein he clearly shows, in our judgment, the correctness of the jury's verdicts on that issue.

It is clear from the medical evidence that the wife suffered a severe injury to her left leg at or about the knee and that this injury has caused a permanent limitation in the use of that leg. However, the degree of such limitation is not shown. Moreover, she is not totally incapacitated thereby, although she was for a brief period following the accident, that is to say, during the time she was in the hospital and until she returned from a vacation of about three months at Miami, where, according to her testimony, she had gone to recuperate. Thereafter her incapacity became progressively less until, at the time of the trial in the superior court ten months after the accident, it was merely some limitation of motion in her left leg at the kneecap, and not total disablement in the normal use of it.

The next most serious injury was the laceration of plaintiff's upper lip, which required two stitches and which has resulted in some impairment of the normal movement of the lip and in some facial disfigurement. Plaintiff also claimed that it has caused some impediment in her speech, but the trial justice expressly found that he had observed none while she was testifying. In this view he appears to be substantially supported by the testimony of other witnesses. Only the plaintiff, herself, insisted that there was an impediment in her speech. Neither medical witness testified to that extent.

The plaintiff, however, seems to have considered the injury to her lip as serious as the injury to her leg, if not more so. She stoutly contended that that injury had serious and permanent consequences. She testified that she was unable to lift her lip naturally, so as to show her teeth when she

smiled, as she had been wont to do before the accident, and that this adversely affected her facial appearance...In other words, she claimed that this defect, along with the mark or slight scar on her lip, constituted a serious facial disfigurement. In this she was corroborated to some extent by her medical witness who was not only her personal physician but had known her socially for about ten years before the accident. Defendant's medical witness, on the other hand, testified that he did not notice any facial disfigurement, except the indistinct scar and a slight lowering of the left corner of her mouth. The trial justice, however, found that there was some disfigurement but he did not point out its extent, except to say that she had a drooping lip, and that lip was quite apparent when one's attention was called to it.

In addition to the above injuries plaintiff suffered some minor injuries to her right leg, also some bruises and contusions, which, although painful for a brief time after the accident, cleared up promptly and left no serious aftereffects. However, while she was in the hospital she did suffer severe pain from her broken left leg and lacerated lip. And she continued to suffer pain in her leg thereafter, but to a less degree, until the cast was removed from that leg later at Miami. Until they were fully healed, her facial injuries also caused her physical pain. She continues to suffer some pain from the injuries to her left leg, especially during damp weather. Moreover, she occasionally has dizzy spells which, however, do not appear, from the medical testimony, to be serious. Plaintiff's medical witness attributed those spells to the blow she received in the accident.

Taking all of those injuries and giving the plaintiff the benefit of the doubt in every instance as to their severity and extent, what constitutes fair compensation therefor? Plaintiff is a housewife. She was engaged in no gainful occupation and has lost no earnings. She is a married woman well past middle life, and the mother of grown children. While in her community she has been active in voluntary relief work, which entails some public appearances, she is not dependent

upon her facial appearance for a livelihood. Her prominence in her relief work is due rather to other qualities, such as her energy and personality.

All the witnesses, other than the plaintiff, agree that her beauty of face has not been seriously affected by the injury to her lip, although her medical witness thinks it has in some indefinite way made her look different, that is, older. The trial justice in his decision observed that "she is a very good looking woman, even now." The evidence therefore does not show what, if any, pecuniary damage the plaintiff has suffered from this facial blemish. However, this is not to say that the actual physical injury itself is not compensable; but, as a disfigurement, it does not admit of the pecuniary valuation that it would if plaintiff were of the public entertainment world or was otherwise wholly or partially dependent for her future support in life upon unblemished facial beauty or attractiveness, or if she had otherwise shown a pecuniary loss therefrom.

Plaintiff's most serious injury is her fractured left leg. The lip injury is less serious. And then there is the matter of the occasional dizzy spells. These physical injuries carry with them their inevitable concomitant of pain and suffering, which was intense during the first three months after the accident. None of these elements of damage submit to admeasurement by evidence of resulting pecuniary loss, such as loss of earnings. Their determination rests largely on the judgment of the jury as to what compensation is reasonable for defendant's neglect of plaintiff's personal security and the consequent pain and suffering entailed by the injuries to her person. But such judgment must be kept within bounds and must not be permitted to include mere sympathy for the plaintiff or any prejudice against the defendant, whether because of the accident itself or because of any real or supposed ability of the defendant to pay ample damages; and it must be based upon evidence, not mere conjecture.

In the instant case we are of the opinion that the jury did not keep within such bounds. It is impossible on the evidence to say that an award of $9000 for the wife's injuries is, on the basis of the limits above mentioned, fair to the defendant. What amount is fair may not be easy to calculate, but we should nevertheless try to approximate it more carefully than the jury appears to have done. Of course it must be admitted that it is not possible in such a matter to do exact justice between the parties. The most that can be done is substantial justice, under which concept there is naturally room for a reasonable difference of opinion as to what are fair damages. Where there is only such a difference the law of damages in this state is that the jury's award must stand. On the other hand, where it clearly appears that the difference is so great as to be grossly excessive, the verdict of the jury should be set aside.

We are of the opinion that, on all the evidence, this verdict is clearly excessive and that fair compensation to the plaintiff should not exceed at the most $5000. This sum, in our opinion, amply compensates her for such personal injuries as she actually sustained and also for the pain which she has suffered and will reasonably continue to suffer therefrom.

The general observations which we have made upon the jury's award of damages to the wife apply with even greater force to their award to the husband. The basis for measuring his damages is definite. His expenses for hospital care and medical treatment of his wife up to the day of trial were capable of exact measurement. The future expense to him for such care and treatment, if any were likely to be necessary, could also be determined with some measure of accuracy based upon past expenses. Plaintiff proved that he had incurred the following expenses: hospital care, $249.25; medical services, $388.60; and physiotherapy treatments, $38, totalling $675.25. There was some testimony that there would be further medical care and hospital treatments of the wife in the diathermy department, but, in our opinion, this

testimony was lacking in sufficient definiteness to enable the jury reasonably to appraise the probable extent of such additional medical care and hospital treatment, and to estimate the expense thereof.

Since the treatments which she had received a short time after she sustained her injuries, when it is reasonable to assume they were much more in need of treatment than they will be in the future, amounted to only $38, it would be clearly an exaggeration to place them higher than that amount. And as for future medical care, there is little in evidence which would tend to show that this would entail any great expense. If, then, we allow an additional $100 to cover such items, that will, in our opinion, amply take care of such probable expenses in the future. As for loss of his wife's services, there is evidence only that a woman was hired at $15 a week, but the length of time during which she was employed is not shown. The jury was thus left without any basis upon which to compute the total cost of such services. If, however, we give the plaintiff the benefit of a liberal view of the evidence on this point, such expense was probably incurred from the day Mrs. Godfrey left the hospital until the day she left her home for Miami, a period of about five weeks. On that assumption plaintiff incurred an expense for such services of not more than $75. Adding all these items together on this liberal computation of plaintiff's expenses, we get the sum of $850.25, which, in our opinion, represents the extreme limit to which the jury could go in awarding damages in favor of the plaintiff on the evidence. The remainder of their verdict is, therefore, clearly unwarranted.

The defendant's exceptions are sustained on the ground that the damages in each case are excessive.

The wife's case is remitted to the superior court with directions to grant defendant a new trial, unless the plaintiff shall, on or before July 12, 1944, file in the office of the clerk of the superior court a remittitur of all of said verdict in excess of $5000. If such remittitur is filed, the superior court

is ordered to enter judgment on the verdict as reduced by the remittitur.

The husband's case is remitted to the superior court with directions to grant defendant a new trial, unless the plaintiff shall, on or before July 12, 1944, file in the office of the clerk of the superior court a remittitur of all of said verdict in excess of $850.25. If such remittitur is filed, the superior court is ordered to enter judgment on the verdict as reduced by the remittitur.