## KIEFFER v. BLUE SEAL CHEMICAL CO.
### Civ. No. 273-51.

United States District Court
D. New Jersey.
Sept. 22, 1952.

Milton, McNulty & Augelli, Jersey City, N. J., for plaintiff, by Arnold B. Elkind, New York City.

McGlynn, Weintraub & Stein, Newark, N. J., for defendant, by Edward R. McGlynn, Newark, N. J.

MODARELLI, District Judge.

This suit involves recovery of damages for personal injuries. The plaintiff is a plumber engaged in business for himself. The defendant manufactures and distributes a drain pipe solvent. On September 19, 1950, while attempting to open a stopped or plugged drain pipe with the defendant's

product, the plaintiff sustained severe injuries resulting from an explosion of a quantity of corrosive material which was blown out of the pipe on which he was working. The injuries were of a most grievous character, of a permanent nature, and destroyed his earning capacity as a plumber.

The plaintiff-consumer was a citizen of Minnesota; the defendant-manufacturer was a citizen of New Jersey; the accident happened in Minnesota.

The case was submitted to the jury on the following theories:

1. That the defendant, a manufacturer of an inherently dangerous instrumentality, was guilty of negligence in labeling its product, in that its label failed to warn the public of the concealed dangers in the use thereof, and also in the directions which it prescribed for using the product; and that it was otherwise negligent in the labeling thereof.

2. That the defendant was guilty of negligence in the manufacture of its product, in that (a) the article sold to the plaintiff was defective, (b) the defendant's manufacturing methods were negligently carried out, (c) the personnel employed by the defendant were below a proper level of training and scientific knowledge, (d) the defendant was careless in failing to adopt inspection methods appropriate to the risk involved in the distribution of a defective product, and (e) that the defendant was generally negligent in the manufacture of its product.

3. That the defendant manufactured a product which became dangerous when used in the manner intended; that it put the article on the market without notice of its dangerous quality and is therefore liable in damages to the plaintiff, who was injured by reason of its inherently dangerous character.

On November 5, 1951, after a five-day trial, the jury returned a verdict in favor of the plaintiff in the amount of $250,000.

As was to be expected, defendant made a motion for a new trial and it was argued on November 26, 1951. Memoranda were prepared and submitted by both sides on the motion for a new trial.

Defendant generally charged as grounds for a new trial: (1) Verdict was contrary to law, (2) contrary to the charge of the court, (3) contrary to the weight of the evidence, and (4) excessive and the result of bias, mistake, passion, and prejudice. The first three charges were practically abandoned by the defendant since there was little, if any, argument offered to substantiate the charges. Much was urged and argued concerning the fourth charge and that narrowed itself down to the fact that "the jury was obviously swayed by sympathy."

Everything was done by both counsel and the court to impress upon the jury when it was impaneled, during the trial, in the summations, and in the court's charge that sympathy was to play no part in arriving at a verdict in this case. It may be well to emphasize that the attorney for the plaintiff pleaded with the jury in his summation not to permit sympathy to play any part in its deliberations. I am sure that I could not have emphasized that point more clearly and more deliberately. So it must be admitted that all those who had a part as lawyers and I, as a judge, did all that could be done to eliminate the factor of sympathy from the jury's deliberations. Whether or not we did, no human being will ever know.

No feature or incident of the trial was, or could be, cited by the defendant to show the intrusion of sympathy in the jury's deliberation, except the amount of the verdict itself. However, before the court could consider that as a ground, the verdict would have to be so excessive as irresistibly to give rise to the inference of passion, prejudice, mistake, bias, sympathy, etc., and hence, palpably against the weight of the evidence. I do not find the verdict to be so excessive, particularly when one recalls the extent, severity, and permanency of the injuries and money damages suffered by this plaintiff. There is no need of my recounting the extent of this man's injuries and damage because I am sure all concerned have a vivid recollection of the same. I believe the balance of this 36-year old plaintiff's life will be for him a "living death" which, of course, is worse than death

itself. He is a married man with four small children.

In addition to the physical injuries this man suffered, his total and permanent loss of earning capacity, the extreme pain and suffering of the past and that which he will undergo in the future as a result of operations which must be performed to graft more skin on his face to try and make him look human; there must be considered the mental suffering, anguish, anxiety, and other disabilities upon which it is almost impossible to set a monetary value. How could one set a monetary value of the loss to the plaintiff due to the effect of the grotesque and unnatural appearance of his face on his wife and minor children. I mention a few of these items only because they must have been all considered by the jury in arriving at this large verdict. The jury also must have considered the rapidly vanishing purchasing power of the dollar.

As has been said many times, in many cases, "pain and suffering have no market price," "cannot be exactly and accurately determined," "no fixed rule or standard to be measured by." Therefore, the judgment of the jury must control, except to prevent a miscarriage of justice. The award of damages for personal injuries is the function of the jury, as is the determination of liability, and the trial judge should rarely and reluctantly disturb the jury's findings except to prevent a miscarriage of justice.

After careful consideration of the case, I am persuaded not only that there was adequate evidence to require the submission of the case to the jury, but, more significantly, there was a manifest and sharp dispute in the conflicting substantial evidence for the respective parties upon which the jury's verdict should be accorded controlling effect. A verdict in behalf of either party would have been supported by adequate evidence, and invulnerable to the charge that it was contrary to the weight of the evidence. That being so, the verdict of the jury will not be disturbed, and the defendant's motion for a new trial will be denied.