Gladys ARLAN et al.

v.

Thomas CERVINI and Brian W. Cervini.

No. 82–86–Appeal.

Supreme Court of Rhode Island.

July 25, 1984.

---

Paul A. Anderson, Providence, for plaintiffs.

Douglas H. Smith, Providence, for defendants.

## OPINION

MURRAY, Justice.

This is an appeal by the plaintiffs from a judgment entered in their favor in the Superior Court. In effect, the plaintiffs argue that two doctrines of our common law applied by the trial justice should be changed. We agree with the plaintiffs argument in regard to one of these doctrines and therefore reverse and remand the case for further proceedings.

This case stems from an automobile accident in which two sisters, Gladys and Georgia Arlan, were injured. Their injuries were incurred while both sisters were passengers in an automobile operated by Brian Cervini. This automobile was owned by Brian's father, Thomas. At the time of the accident, Gladys was sixteen years old and Georgia was fourteen years old. Brian was fifteen and one-half years old, and thus not licensed to operate a motor vehicle. A Superior Court jury returned a verdict finding Gladys 35 percent negligent and Brian 65 percent negligent. Georgiana Arlan, mother of Gladys and Georgia, received a verdict for the total medical expenses incurred by both children; Gladys was awarded $715 for pain and suffering, and Georgia received no damage award. After a hearing on plaintiffs' motion for an additur or a new trial, the trial justice increased Gladys's verdict by $1,300 (65 percent of $2,000) and confirmed the award of no monetary damages to Georgia.

Initially, plaintiffs argue that the trial justice erred in instructing the jury

that a minor operating a motor vehicle is not held to the same standard of care as an adult. This instruction, however, conforms to the doctrine in this state that imposes upon minors a standard of care consistent with their age and experience. *See, e.g., Haddad v. First National Stores, Inc.*, 109 R.I. 59, 65, 280 A.2d 93, 97 (1971); *Rosenthal v. United Electric Railways Co.*, 79 R.I. 11, 15–16, 82 A.2d 830, 832 (1951). Although several other jurisdictions have adopted the rule urged upon us by plaintiffs, we decline at this time to address this question. Our refusal to consider this argument here is based in part upon our conviction that the application of an adult standard of care to minors operating motor vehicles would not have increased the percentage of negligence for which the jury found Brian to be responsible in this accident.

■ The plaintiffs' second argument, however, we shall address. This argument can be summarized as follows: Gladys suffered extensive facial injuries as a result of the accident and is left with serious and permanent facial scarring. As a result, Gladys became depressed, quit school, gained a significant amount of weight, and in general suffered a "cataclysmic loss of self-esteem." Accordingly, Gladys should be compensated for what her counsel refers to as "mental suffering arising from consciousness of a permanent facial scar." Under this theory, counsel argues that the trial justice erred in instructing the jury that mental suffering arising from consciousness of a facial scar is not compensable, and also in increasing the award to Gladys by only $1,300.

The law in Rhode Island presently offers at most only mixed support for plaintiffs' argument. In *Halladay v. Ingram*, 78 R.I. 464, 82 A.2d 875 (1951), a seven-year-old child suffered facial injuries and subsequent scarring when a bus on which she was traveling collided with a parked vehicle. The evidence was uncontroverted that the scars were fairly inconspicuous and

would become even more so as the child grew older. We stated in *Halladay:*

"It is clear that there is now no physical pain and suffering that can be attributed to plaintiff's lacerations. There has been some suggestion that there is and will be mental suffering therefrom because of a sense of shame or humiliation resulting from consciousness of the disfiguring marks. In this state such suffering is not an element of damage." *Id.* at 470, 82 A.2d at 878.

We qualified the *Halladay* limitation, however, in *Webbier v. Thoroughbred Racing Protective Bureau, Inc.*, 105 R.I. 605, 254 A.2d 285 (1969), where plaintiff was awarded damages for false imprisonment and assault and battery. The plaintiff in *Webbier* was unlawfully detained in private offices by racetrack detectives who questioned him in an intimidating manner, dragged him out of the office, threw him down a flight of stairs, and forcibly ejected him from the grounds. Addressing the allegedly excessive award to the plaintiff, we stated that

"[s]ince the injury involved in false imprisonment is in part a mental one, he is entitled to be compensated for mental suffering and humiliation he experienced particularly as he was being propelled down the stairs in front of the crowd that had gathered." 105 R.I. at 620, 254 A.2d at 293; *see also* Prosser, *Handbook of the Law of Torts* § 11 (4th ed. 1971).

As read literally, therefore, the *Webbier* opinion created an exception to the *Halladay* rule, awarding compensation for mental suffering in those situations in which the underlying injury is mental in nature. However, as explicitly stated by us today, the *Webbier* decision recognized that mental suffering is compensable whether the underlying act that caused the plaintiff's injuries is purely mental, purely physical, or a combination thereof.

A careful analysis of the facts in *Webbier* reveals that the public humiliation suffered by the plaintiff resulted from his being physically abused by the detectives

and being tossed down the stairs. Admittedly, he was also falsely imprisoned and assaulted, but it was the physical battery that was viewed by the spectators in *Webbier*, and it was that physical battery that was most responsible for his humiliation and mental suffering.

Consequently, to the extent that our decision in *Webbier* has been interpreted as authority solely to support an award of damages for mental injuries flowing from the plaintiff's false imprisonment, we today reject such a notion. In *Webbier*, we allowed the plaintiff to recover for the *mental injuries* that he *sustained as a direct result of a physical act* of the defendant (the battery), and not simply those that may have been the indirect consequence of his false imprisonment.[1] So interpreted, the *Webbier* decision does not neatly square with our decision in *Halladay*. The two cases can be distinguished upon the ground that the plaintiff in *Webbier* suffered a "one-time" limited humiliation, whereas the plaintiff in *Halladay*, like plaintiff in the present case, continues to suffer mentally through consciousness of her scars. This distinction is, however, senseless in determining a proper award of damages. In *Halladay*, no recovery was allowed for mental injuries even though it is likely that the total amount of such embarrassment stemming from a permanent injury would have exceeded that which flowed from the "one-time" injury suffered by the *Webbier* plaintiff. Mental suffering is mental suffering, and the fact that such suffering may continue beyond its initial manifestation does not warrant a refusal to recognize it as a compensable element of damages.

A sound reading of both cases demonstrates the closeness of the facts contained therein. The injuries sustained by their respective plaintiffs directly related to their having been placed by a defendant in an undesirable condition or situation in the public's eye. Whether a plaintiff's perception of his public image is connected with ejectment from a public racing facility or whether it results from a permanent facial scar sustained in an automobile accident, the mental suffering is rooted in the plaintiff's legitimate concerns with his or her being viewed by the public as an object of ridicule. To recognize mental suffering under the facts of *Webbier*, but not in cases of permanent facial scarring would therefore both defy our sense of justice and compel us to reach a clearly illogical result. Both cases are humiliation cases, and in our view a case of permanent scarring normally involves greater public embarrassment.

The Supreme Court of Maine recognized mental suffering arising from consciousness of a permanent facial scar as early as 1910:

"There is good reason for the rule. The disfigurement is a physical injury. It is a continuing injury. The mental suffering may continue with it. The mental suffering is a real injury. It proceeds necessarily and inevitably from the physical injury. It is a natural consequence of the injury. Compensation, omitting this element, is not full compensation. One might be made repulsive to the sight for life with comparatively little physical injury, and yet according to the rule [denying recovery], be entitled to but little compensation. The reason given in some cases, that the amount of mental pain caused by disfigurement necessarily varies so much with the character, temperament and circumstances of the injured person that no just measure of damages from it can be found, applies

---

**1.** In this regard, it is important to recognize that the interest protected by the tort of false imprisonment is, to a large extent, a mental one and resembles the "apprehension of contact" that is of concern in the doctrine of assault. *See* Prosser, *Handbook of the Law of Torts* § 11 at 43 (4th ed. 1971). That is, no physical contact or injury is required for a plaintiff to recover for false imprisonment or assault. *See Webbier v. Thoroughbred Racing Protective Bureau, Inc.,* 105 R.I. 605, 613–14, 254 A.2d 285, 290 (1969). However, unlike false imprisonment and assault, the doctrine of battery is concerned with physical freedom from actual, intentional, and unpermitted contact. *See* Prosser, § 9 at 34.

equally well to physical pain, though perhaps in a less degree. And damages are always allowable for physical suffering." *Coombs v. King*, 107 Me. 376, 381, 78 A. 468, 469–70 (1910).

The fact that a permanent scar is partially or temporarily concealable either by clothing, cosmetic surgery, or ordinary makeup should not automatically preclude recovery. Mental suffering, arising from consciousness of a facial or bodily scar does not necessarily disappear when the scar is concealed—it is the *consciousness* of the scar that causes the mental suffering. In the present case, some of plaintiff's several scars might be partially concealed by cosmetic surgery and might further be concealed by application of ordinary makeup. Nonetheless, plaintiff may be conscious that her disfigurement exists, as may others with knowledge of her injuries. Concealment of a permanent scar will not therefore automatically prohibit recovery for the mental suffering connected therewith. The trier of fact may, however, consider concealment as a palliative factor in awarding damages.

We recognize that a trier of fact may be hard-pressed to make a precise monetary calculation for the amount of any mental suffering plaintiff has sustained. This fact, in and of itself, however, is not sufficient justification to avoid recognizing mental suffering as a compensable element of damages. The amount of recovery must naturally depend upon the facts and circumstances of the particular case. In the present case, no damages were awarded for the mental suffering arising from the facial scar because of our prior holding in *Halladay.*

We hold, therefore, that mental suffering, which may include nervousness, grief, anxiety, worry, shock, humiliation, embarrassment, or indignity, arising from consciousness of a facial or bodily scar, is a compensable element of damages. In so holding, we note that this rule has long been recognized in many other jurisdictions [2] and reflects what we consider to be a sound and just approach to the problem of compensation for personal injuries. To the extent that our decision in *Halladay* is inconsistent with our holding today, it is overruled.

The plaintiffs' appeal is sustained, and the papers in this case are remanded to the Superior Court for further proceedings consistent with this decision.

**2.** The United States Supreme Court, in affirming an award for mental suffering stemming from personal disfigurement, stated that "[i]t certainly cannot be pronounced a proposition of law that personal mutilation or disfiguration may be a matter of indifference to anybody or that sensitiveness to it may vary with 'temperaments' and be incapable of measurement." *Erie Railroad Co. v. Collins*, 253 U.S. 77, 85–86, 40 S.Ct. 450, 453, 64 L.Ed. 790, 794 (1920).

Numerous jurisdictions specifically recognize mental suffering arising from consciousness of a facial scar as a compensable element of damages. *See, e.g., McClure v. Price*, 300 F.2d 538 (4th Cir.1962); *Zaccari v. United States*, 144 F.Supp. 860 (D.Md.1956); *Kieffer v. Blue Seal Chemical Co.*, 107 F.Supp. 288 (D.N.J.1952); *Crisci v. Security Insurance Co. of New Haven, Connecticut*, 66 Cal.2d 425, 58 Cal.Rptr. 13, 426 P.2d 173 (1967); *Lester v. Magic Chef, Inc.*, 230 Kan. 643, 641 P.2d 353 (1982); *Miller v. Thomas*, 258 La. 285, 246 So.2d 16 (1971); *Johnson v. Larson*, 234 Minn. 505, 49 N.W.2d 8 (1951); *Hanlon v. Pomeroy*, 102 N.H. 407, 409–10, 157 A.2d 646, 648–49 (1960); *Fish v. Gosnell*, —— Pa.Super. ——, 463 A.2d 1042 (1983); *Lipscomb v. Poole*, 247 S.C. 425, 147 S.E.2d 692 (1966); *Ma v. Russell*, 71 Wash.2d 657, 430 P.2d 518 (1967); *Husted v. French Creek Ranch*, 79 Wyo. 307, 333 P.2d 948 (1959).